**In the Interest of T.C., a Minor Child,**

**M.L.F., Mother, Appellant.**

**No. 91–1890.**

Court of Appeals of Iowa.

June 25, 1992.

Paul E. Pfeffer of Paul E. Pfeffer Law Office, Clinton, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Special Asst. Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee State.

Stephen D. Haufe of Jurgemeyer, Frey & Haufe, Clinton, guardian ad litem-appellee.

Heard by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

## FACTS

T.C. was born September 17, 1981, to M.L.F., his mother, and L.C., his father. The father has had no contact with the child since 1987.

On August 23, 1989, the State filed a petition alleging T.C. was a child in need of assistance (CINA) pursuant to Iowa Code sections 232.2(6)(b) and (c)(2). The petition alleged M.L.F. had become so intoxicated that she could not care for the child. The police removed T.C. from his mother's custody and contacted DHS.

On August 31, 1989, the juvenile court issued an order affirming the child's removal from the home and directing M.L.F. to enroll in a chemical abuse program, to make necessary arrangements for appropriate housing, and to find employment for herself. T.C. was placed with his grandmother in Illinois.

An adjudicatory hearing was held and the parties stipulated T.C. was a CINA.

On December 5, 1989, a dispositional hearing was held and physical custody of T.C. was returned to his mother.

On August 16, 1990, M.L.F. voluntarily placed T.C. in foster care due to her inability to deal with his behavior problems. T.C. suffers from attention deficit disorder (ADD) with hyperactivity. T.C. is taking Ritalin for the problem. On the same day, M.L.F. was taken by the police to a hospital after making suicidal claims. The hospital reported M.L.F. had a high amount of alcohol in her blood.

On November 14, 1990, the juvenile court modified the prior dispositional order and transferred custody of T.C. to DHS for placement in foster care. The juvenile court ordered M.L.F. to undergo an additional substance abuse evaluation. The juvenile court found that M.L.F.'s attitude and failure to participate in services caused the lack of progress. Finally, the juvenile court found T.C. had a strong allegiance to his mother. Therefore, the juvenile court appointed an attorney for T.C. in addition to the guardian ad litem.

A review hearing was held on May 1, 1991, and the juvenile court continued placement of T.C. in foster care.

A permanency hearing was held. On August 26, 1991, the juvenile court filed its findings. The juvenile court found T.C. has made significant improvements in his behavior since his placement in foster care. The juvenile court further found M.L.F.'s visitations were sporadic and she neglected parenting classes. She also refused counseling for depression and substance abuse. M.L.F. continued to see T.C. as the one with the problems and believed she had nothing to do with the difficulties in the home before T.C. was removed. Instead of directing that a petition for termination be filed, the juvenile court continued T.C.'s placement in foster care.

On September 30, 1991, the State filed a petition to terminate the parental rights of T.C.'s mother and father.

On November 1, 1991, the juvenile court ordered the termination of the parental rights of M.L.F. and L.C. L.C. did not appear at the termination hearing nor does he appeal the termination order. Based on the mother's failure to recognize the problems T.C. has and the need for changes at home, the juvenile court concluded T.C. could not be returned home.

M.L.F. filed this appeal. We affirm.

## SCOPE OF REVIEW

Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

In re R.M., 431 N.W.2d 196, 199 (Iowa App.1988) (citing Dameron, 306 N.W.2d at 745); see also In re A.C., 415 N.W.2d 609, 613 (Iowa 1987), cert. denied, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988).

In the past, the courts have recognized that parental interest in the integrity of the family unit exists. Dameron, 306 N.W.2d at 745. However, this interest is not absolute and may be forfeited by certain parental conduct. Id. Because the State, as parens patriae, has the duty to assure that every child within its borders receives proper care and treatment, it must intercede when parents abdicate that responsibility. Id. (citations omitted).

## ANALYSIS

■ The pertinent statutory provision in this case is Iowa Code section 232.116(1)(c) which states that the court may order the termination of the parental rights of a parent if it finds all of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, **the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance contin-ues to exist despite the offer or receipt of services.**

Iowa Code § 232.116(1)(c) (1991) (emphasis added).

In the case at bar, the juvenile court based T.C.'s CINA adjudication on the following problems. M.L.F. left T.C. with a caretaker for two days while she was intoxicated. Placement of T.C. with the caretaker was inappropriate because the caretaker suffered mental health problems. M.L.F.'s inappropriate and inconsistent parenting of T.C. created a situation where the child's behavior was out of control, he had a low self-esteem and he acted violently toward his mother and himself.

The State maintains M.L.F. has refused to attend counseling and parenting classes. The State also contends M.L.F. has failed to admit and address her substance abuse and psychological problems. Therefore, the State argues M.L.F. has failed to cooperate in correcting the circumstances which led to the CINA adjudication and should have her parental rights terminated. We agree.

M.L.F. denies she has a substance abuse problem and a need for counseling. M.L.F. claims the child is the problem, not her. The record states M.L.F. has been arrested a couple of times for intoxication. It is undisputed T.C. was initially removed from the home because his mother was too intoxicated to care for him. Four months later, he was returned to M.L.F. Eight months thereafter, M.L.F. voluntarily placed T.C. in foster care conceding she was unable to control him. M.L.F. did not follow hospital recommendations on how to control T.C.'s behavior caused by ADD. She also refused to attend ADD support groups.

In In re R.J., 436 N.W.2d 630 (Iowa 1989), the court stated, "We believe these children have waited long enough for their mother to rise above her debilitating dependency on alcohol." Id. at 635.

"This is a history of good intentions, but feeble resistance to temptation and wrongdoing, and little or no consideration for the unwholesome influences created or the moral or mental welfare of these children." In these circumstances,

we cannot gamble with the children's future. They must not be made to await their mother's maturity.

*In re Kester,* 228 N.W.2d 107, 110–11 (Iowa 1975) (quoting *In re Morrison,* 259 Iowa 301, 310–11, 144 N.W.2d 97, 102–03 (1966)).

There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

*In re A.C.,* 415 N.W.2d 609, 613 (Iowa 1987).

M.L.F. has failed to face her substance abuse problem and has denied suffering from depression, despite her multiple suicide threats. She has continually blamed others, specifically T.C., for her own personal problems. Furthermore, she adamantly denies a need for services. Services have been offered to M.L.F., however, she has refused the services on the premise that she does not have a problem. Consequently, the circumstances which led to T.C. being adjudicated a CINA still exist.

We find the requirements of Iowa Code section 232.116(1)(c) have been met and the parental rights of M.L.F. should be terminated. We hold it is in the best interest of T.C. to terminate the parental rights of his mother. T.C. cannot wait indefinitely for a stable home. After considering all issues presented, we affirm the district court.

Costs of this appeal are taxed to the appellant.

AFFIRMED.