# IN THE COURT OF APPEALS OF IOWA

No. 24-1006
Filed September 4, 2024

**IN THE INTEREST OF M.N.,**
**Minor Child,**

**S.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.

The mother appeals the juvenile court's dispositional order, which ordered the child's continued removal from the mother's custody. **AFFIRMED.**

Jesse A. Macro Jr. of Macro Law, LLP, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Megil D. Patterson of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

The mother of one-year-old M.N. appeals from a dispositional order in the child-in-need-of-assistance (CINA) proceedings, challenging the juvenile court's decision the child could not yet be returned to her custody.[1] "We review decisions in CINA proceedings de novo." *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (citation omitted). "While we are not bound by the juvenile court's factual findings, we accord them weight." *Id.* "Our primary concern is the child[]'s best interests." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). After our review, we affirm the dispositional order of the juvenile court.

Under Iowa Code section 232.99(4) (2024), after the dispositional hearing, the juvenile court is required to "make the least restrictive disposition appropriate considering all the circumstances in the case." From least to most restrictive, the court is permitted to enter an order suspending judgment and continuing the proceedings for up to twelve months, Iowa Code § 232.100, allowing the parent to retain custody subject to specific terms and conditions, *id.* § 232.101, appointing a guardian, *id.* § 232.101A, or transferring legal custody of the child to the Iowa Department of Health and Human Services (the department). The court can only transfer (or keep) the child out of parental custody if it finds by clear and convincing evidence that the "child cannot be protected from physical abuse without transfer of custody" or "from some harm which would justify the adjudication of the child as

---

[1] M.N. is also removed from his father's custody. While the father filed a notice of appeal from the dispositional order, he voluntarily dismissed his appeal before the supreme court transferred the case to this court for resolution.

a [CINA] and an adequate placement is available." Iowa Code § 232.102(4)(a)(1)–(2).

In her petition on appeal, the mother argues that while there was an issue or two that may have justified the involvement of the department and the juvenile court with her family, those issues were isolated and are not ongoing. Advocating that "minimally adequate" parenting is all that is required of her, the mother questions whether it was ever appropriate to remove M.N. from her custody.[2] She urges that there is no reason for his continued removal. But the mother's version of the facts are at odds with those found by the juvenile court, with which we agree.

The department became involved with the family in July 2023 when it was alleged that the mother drove intoxicated with M.N. and his then-eight-year-old sibling, M.M.,[3] in the car, but that incident was resolved without referral. The department again became involved in December 2023 after learning that the mother left one-year-old M.N. alone in a car twice that month while she went tanning at a tanning salon. The mother was criminally charged with child endangerment, to which she pled guilty, received a deferred judgment, and was placed on probation for two years. Pointing to a recent Iowa Supreme Court case, the mother questions whether her action of leaving one-year-old M.N. alone in a vehicle during winter was even illegal. *See generally State v. Cole*, 3 N.W.3d 200

---

[2] Insofar as the mother is challenging the initial removal of M.N.—as opposed to the child's continued removal—that issue is now moot. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("Any error committed in granting the temporary [removal] order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order.").

[3] M.M. was also removed from the mother's custody and placed with his father (who is different than M.N.'s father). M.M. is not at issue in this appeal.

(Iowa 2024) (vacating conviction for child endangerment where mother left five children—ages twelve to five years old—at home sleeping while she went to buy groceries). And she argues that, whether it was illegal or not, she learned her lesson and will not repeat the mistake.

But those arguably isolated incidents of leaving the young child alone in a vehicle are not the only concerns. While it was those incidents that first caused the department to recommend services, the record evidence exposes the mother's problem with excessive alcohol consumption. In May 2023 the mother was arrested for operating while intoxicated and eluding.[4] And it was M.M.'s interview at a child advocacy center (for an unrelated reason) that led to the department's first child-protective assessment in July 2023, which ended without a referral. In that interview, M.M. offered up that after spending the day with his mother at an event at a bar, the mother made him blow into a square "breathing thing" in the front seat of her car so it would start. He described having to breathe into the device a second time while the mother was driving when it started to beep while they were on the road. M.M. reported feeling nervous as his mother drove "crazy" while he and his brother were in the backseat.

But that was not all. When department workers spoke to M.M. in December after the department again became involved, he reported things were not so good at his mother's home. He stated he is required to watch M.N. while his mother sleeps and recounted a time when his mother was drinking beers at home and became too drunk; he could not wake her up when he tried. In other parts of the

---

[4] The mother was convicted of eluding, given a suspended sentence of one year, and placed on probation. The OWI charge was dropped.

same report, department workers summarized concerns the mother was frequently intoxicated and that, at times, M.M. had to touch her to ensure she was still breathing. The mother denied having a problem with alcohol. She testified at the disposition hearing that receiving an OWI charge was a single poor decision rather than indication of a bigger problem, and she reported to the person conducting her substance-use evaluation that she consumes alcohol only once every couple months. Yet, the mother continued exhibiting concerning behavior after the children were removed in January 2024.

In February, she was charged with domestic abuse assault causing bodily injury, with M.N.'s father as the victim.[5] The police report from the incident indicated the mother was impaired by alcohol at the time. When asked about the incident at the disposition hearing, the mother denied she was under the influence of alcohol. But M.N.'s father—who was in support of M.N. returning to the mother's custody—testified the mother was drinking alcohol before the assault took place.

In support of her stance that she does not have a problem with the excessive consumption of alcohol, the mother testified that she was required to wear an alcohol monitoring device for about thirty days as part of her probation requirements. She argues the absence of positive results during that time shows she does not have a problem with consuming alcohol. But, as the juvenile court recognized, that report was not introduced at the hearing, and the mother lacks credibility when it comes to self-reporting her use of alcohol. Additionally, the mother testified that her substance-use evaluation did not recommend any

---

[5] This charge was later amended to disorderly conduct, to which the mother pled guilty in May 2024.

treatment, but that evaluation was also not introduced as evidence. Based on the mother's behavior, the mother's self-reporting to the evaluator about her use of alcohol is suspect, at best.

While the father had moved out of state before the dispositional hearing, the mother and father also have a history of allegations of domestic violence in their relationship, with each having been the victim and the perpetrator. The mother did not deny this history; instead she suggested that the issue no longer existed because she took some online classes about domestic violence and had an hour-long conversation with the department caseworker. The juvenile court, recognizing the mother's inability to grasp the severity of her actions, stated, "[the mother's] inability to gain that insight [into the concerns over her behavior] is a large barrier to reunification and her ability to meaningfully engage in services."

Overall, as the juvenile court recognized, the mother continues to deny the reality of the family's situation and her role in it. While the mother has participated in some services, she continues to "check boxes" rather than address the core issues that led to removal and adjudication. *See In re D.D.*, 955 N.W.2d 186, 192–93 (Iowa 2021) ("[T]erminating a [CINA] proceeding isn't an exercise in box-checking. Progress in therapy and similar efforts to 'put the work in' are unquestionably important. But the statute doesn't ask whether all the boxes have been checked or the work put in; it asks whether the child remains in need of supervision, care, or treatment."). And without that insight or recognition of changes that need to be made, we agree with the juvenile court that M.N. is still at risk of adjudicatory harm if returned to the mother's custody. *See, e.g., In re T.C.*, 489 N.W.2d 53, 56 (Iowa Ct. App. 1992) (holding the circumstances that led to

termination still existed when the parent failed to face substance-abuse problem, focused on blaming others, and "adamantly deni[ed] a need for services . . . on the premise that she [did] not have a problem"); *In re J.W.*, No. 02-1359, 2002 WL 31528638, at *3 (Iowa Ct. App. Nov. 15, 2002) (affirming juvenile court's conclusion risk of harms resulting in child's adjudication remained "the same because of [the parent's] failure to address these issues").

Because M.N. would face further adjudicatory harm if returned to the mother's custody at this time, we affirm the juvenile court's dispositional order.

**AFFIRMED.**