In the Interest of Angel LONG, a child, Appellee,

v.

Hazel LONG and Joe Long, Appellants.

No. 3–59262.

Supreme Court of Iowa.

June 29, 1977.

James C. Dunbar, Waterloo, for appellants.

Richard C. Turner, Atty. Gen., Stephen C. Robinson, Sp. Asst. Atty. Gen., Bruce Foudree, Asst. Atty. Gen., David H. Correll, County Atty., for appellee, State of Iowa.

Frederick G. White, Waterloo, for the child.

Heard by MOORE, C. J., and MASON, RAWLINGS, REES and McCORMICK, JJ.

RAWLINGS, Justice.

Joe and Hazel Long appeal trial court's termination of their parental relationship with Angel Long in a Section 232.41(2)(e), The Code 1973 proceeding. We affirm.

Before Angel's birth, January 22, 1973, her natural father had died. Thereupon the mother, Hazel, married Joe Long.

March 2, 1973, Angel, then less than six weeks old, was referred to the Department of Social Services because of suspected child abuse. A medical examination revealed the child had a fracture of the lower right leg and a small healing scar on one hand. The

physician also found Angel malnourished, pale, weak and ill. In fact she weighed three pounds less than at birth. A petition, charging neglect, was filed in Juvenile Court, Black Hawk County.

The Department of Social Services took immediate custody of the child and upon discharge from the hospital placed her in a foster home. Although the parents denied all responsibility for the injuries, the stepfather, Joe Long, was charged and convicted of assault and battery upon Angel. His sentence was suspended on condition he undergo psychological counseling.

May 10, 1973, Angel was adjudged to be neglected and dependent. Subsequently, the parents were formally directed "to attend any counseling that the Social Services can provide". Thereafter, the department referred Longs to the Mental Health Center, Nurses Association, and Lutheran Social Services. They were also granted in-home visitation rights with Angel. During this time both Hazel and the foster mother reported seeing bruises on Angel. The foster mother admitted, however, Angel was prone to falling. But bruises occurring during Angel's visits with the Longs were never explained.

January 25, 1975, the Department of Social Services filed a petition for termination of the parent-child relationship between Longs and Angel. It thereby invoked § 232.41(2)(e) which permits termination if the court finds "[t]hat following an adjudication of neglect or dependency, reasonable efforts under the direction of the court have failed to correct the conditions leading to the termination."

At one of the three hearings which followed, Marilyn Reynolds, the social worker who originally placed Angel in foster care, recommended termination because Longs continued to deny having abused the child and blamed others for past problems. She also stated, "There has been no significant change in Mr. Long. I feel that things that led him to abuse Angel in the first place are still present."

Lowell Junkman, director of Lutheran Social Services, testified he met with the Longs twice in early 1974, but could not help them because of their attitude and motivation problems. He also saw no "possibility of growth occurring for them".

Hazel stated she has changed, is now better able to care for the children, and alludes to the fact that a son, born to her and Joe March 28, 1975, appears to be a healthy, well-cared for baby. The mother continues to deny, however, that either she or her husband ever injured Angel.

Medical testimony concerning the possibility of future abuse is contradictory. Dr. Spencer, a psychiatrist with the Mental Health Center, insisted Angel should not be returned to the Longs. He testified there is strong evidence revealing the girl was a victim of the "battered child syndrome" and "Angel wouldn't be very safe in that home". This doctor also testimonially stated there is better than a 50% chance Angel would be abused if returned to the parents. He concluded, "I don't think there has been substantial change of that type that would lessen the possibility of physical abuse."

Dr. Hastings, a psychiatrist, confined his clinical study to mental ability of the Longs to serve as adequate parents. Based thereon he did not feel there should be a termination of parental rights, but frankly admitted his inability to express an opinion regarding Dr. Spencer's "battered child syndrome" analysis and conceded Angel was possibly such a victim. Dr. Hastings further opined it would be inconsistent to take Angel from the Longs while allowing them to retain custody of their newly born son. On the other hand, this witness said "Joe Long is a rather impulsive, somewhat emotionally unstable individual who has a tendency to impress his feelings physically rather than in words." He also recommended the Longs be required to have a session with a professional mental health worker, not less than every two weeks for a period of six months if Angel were placed in their custody. Moreover, Dr. Hastings agreed with his associate, Dr. Finkelstein who, upon a "Psychological Evaluation" of Joe Long stated, in part: " * * * strong provocation can still potentially elicit rage

reactions in him and get beyond his frustration tolerance, and at such times he may still lash out angrily and harmfully. * * He ought not to have to baby-sit, or have them exclusively dependent on him for he cannot tolerate too much demand on him or unsocial behavior."

February 5, 1976, trial court entered an order terminating parental rights and in so doing stated, "The parents consistently refused to admit that they had any problems or that their daughter had any physical problems, or needed any treatment" and "They refused to attend any counseling sessions." It was also there determined that conditions leading to the May 1973 adjudication of neglect and dependency had not been alleviated, despite continued social service efforts.

These are the issues here raised by the mother and stepfather:

(1) Is § 232.41(2)(e), unconstitutionally vague?

(2) Did trial court err by terminating parental rights where the petition to terminate allegedly provided inadequate notice of the factual basis and statutory standards justifying the proposed termination?

(3) Did trial court err by applying a "preponderance" basis of proof rather than a "clear and convincing evidence" standard?

(4) Does the record support trial court's finding that conditions leading to an earlier adjudication of neglect and dependency had not been alleviated?

█ I. Our review is de novo. Code § 232.58. See also *In re Scarlett,* 231 N.W.2d 8, 10 (Iowa 1975); *In re McGlasson,* 195 N.W.2d 116, 117 (Iowa 1972); Iowa R.Civ.P. 334.

█ When considering credibility of witnesses we accord weight to trial court's fact findings but they are not binding. Iowa R.Civ.P. 344(f)(7). This proposition is particularly applicable in a case of the present kind. *In re Interest of Yardley,* 260 Iowa 259, 265, 149 N.W.2d 162 (1967). Such matters as demeanor of the parties, candor or lack thereof on the part of witnesses,

attitudes, real and assumed, and apparent motives of those testifying, are all entitled to much weight in making findings. *In re Morrison,* 259 Iowa 301, 306, 144 N.W.2d 97, 100 (1966).

It is for us to review facts as well as the law and adjudicate rights anew upon assignments properly presented, provided issue has been raised and error, if any, preserved below. *In Interest of Wardle,* 207 N.W.2d 554, 557 (Iowa 1973).

█ II. The first and crucial consideration is the child's best interest. *In re McGlasson,* 195 N.W.2d at 118; Iowa R.Civ.P. 344(f)(15). While it is presumed a child's interests will be best served by leaving it with the parents, this is not conclusive. A child's right to the care, support and affection of his parents, and their custodial privilege, unless by conduct they forfeit same, must be kept in mind. See *Hernandez v. State ex rel. Arizona Dept. of Econ. Sec.,* 23 Ariz.App. 32, 530 P.2d 389, 392–393 (1975). Nevertheless, a duty is imposed upon the State, as parens patriae, to assure proper treatment to every child within its borders. *In re McDonald,* 201 N.W.2d 447, 453 (Iowa 1972).

█ That which has taken place and is likely to occur in the future because of present conditions must be considered. In other words, we are required to determine the long-range as well as immediate interests of the child. In the same vein, this court has observed, parent-child termination proceedings are not like a tort action where injury must be proved before damages may be recovered. Our termination statute is preventive as well as remedial. It mandates action to prevent probable harm to children and does not require delay until after harm has been done. *In Interest of Kester,* 228 N.W.2d 107, 110–111 (Iowa 1975).

█ Finally, regardless of Code § 232.46, petitioner must have established a factual basis for termination of parental rights by clear and convincing evidence. *Alsager v. District Court of Polk Cty.,* Iowa, 406 F.Supp. 10, 25 (S.D.Iowa 1975). See also *In*

*Interest of Hochmuth,* 251 N.W.2d 484, 489 (Iowa 1977); Section 232.31, The Code 1977.

 III. As heretofore noted, these appealing parties first assert trial court erred in basing its decision to terminate their parental rights on a statute which is unconstitutionally vague. They rely primarily on *Alsager v. District Court of Polk County,* Iowa, 545 F.2d 1137 (8th Cir. 1976), and related opinion, 406 F.Supp. 10. A similar argument was recently presented to us. See *In Interest of Hochmuth,* 251 N.W.2d at 488.

Here, unlike the situation in *Hochmuth,* no constitutional issue was ever raised below, even belatedly.

And, as stated in *Wolfs v. Challacombe,* 218 N.W.2d 564, 570 (Iowa 1974):

"Ordinarily, issues not raised in the trial court, including constitutional questions, cannot be effectively asserted the first time on appeal. Furthermore the constitutionality of a statute may not be considered as a basis for reversal where the question was not raised in the lower court. [Citation]. Since plaintiff's contention in this respect was not urged in the trial court it presents nothing for review in this court."

See also *B & B Asphalt Co. v. T. S. McShane Co.,* 242 N.W.2d 279, 283 (Iowa 1976); *Pieper v. Harmeyer,* 235 N.W.2d 122, 126 (Iowa 1975); *Peters v. Iowa Emp. Security Com'n.,* 235 N.W.2d 306, 312 (Iowa 1975).

Nevertheless, to such extent as is deemed appropriate, the stated constitutional issue is entertained.

At the outset, the two Federal *Alsager* decisions, *supra,* did not involve the Act presently involved, i. e., Section 232.41(2)(e), The Code 1973.

But, as in *Hochmuth,* a long and detailed history of juvenile court proceedings, prior to the termination hearing, did amply serve to accord the Longs definite information as to specific complaints against them.

Additionally, there was here no failure "to exhibit the threshold harm necessary to give the state a compelling interest suffi-cient to justify permanent termination of the parent-child relationship". *Alsager,* 545 F.2d at 1137. Rather, the record demonstrates a strong possibility that Angel will again be abused if placed with the parents. Surely there is no compelling reason to await the happening of such tragic results if the involved infant is to be effectively protected. *In re Scarlett,* 231 N.W.2d at 12.

This means the parents' first assignment affords them no basis for a reversal.

IV. The next claim advanced by Longs relates to alleged error below in terminating parental rights because the petition provided inadequate notice of the factual basis and statutory standards justifying the proposed termination. They again rely on *Alsager,* 406 F.Supp. at 24, where this statement is found: "The Fourteenth Amendment requires notice in parental termination proceedings to contain both the alleged factual basis for the proposed termination and a statement of the legal standard authorizing termination."

 We have correlatively held it is a denial of due process to terminate parental rights on a ground as to which the child and parents have not had proper notice. *In Interest of Robbins,* 230 N.W.2d 489, 491 (Iowa 1975). And *In re Meyer,* 204 N.W.2d 625, 626 (Iowa 1973), holds such notice must set forth the alleged misconduct with particularity. See also *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

Focusing now upon the issue before us, the two Federal *Alsager* decisions, *supra,* involved Code § 232.41(2)(b), (d) which relate to parental neglect. Distinguishably, the present case is foundationed upon § 232.41(2)(e) which provided for termination of a parent-child relationship if the court finds: "That following an adjudication of neglect or dependency, reasonable efforts under the direction of the court have failed to correct the conditions leading to the termination."

 As aforesaid, a hearing-based neglect adjudication had been entered May 10, 1973. Then by the January 25, 1975, peti-

tion, upon which the parent-child termination is presently sought, Code § 232.41(2)(e) was first specifically invoked, followed by this statement as to the basis for parental termination:

"1. That following an adjudication of neglect, reasonable efforts under the direction of the Court have failed to correct the conditions leading to the termination:

"1) That on May 10, 1973 the child, Angel Long, was adjudicated a neglected and dependent child.

"2) That since March 2, 1973 the child, Angel Long, has resided in a foster home pursuant to Court order.

"3) That in spite of repeated and continual efforts by the Black Hawk County Department of Social Services the conditions that led to the initial adjudication of neglect and dependency have not been alleviated."

Procedurally, the present case is so closely akin to *Hochmuth* that we today adopt, without needless repetition, the rationale therein articulated, 251 N.W.2d at 488–489. Furthermore, as in the cited case, this court now holds § 232.41(2)(e), as applied to Longs, was adequately specific and precise.

In addition thereto, the record reveals Longs had other ample notice regarding the factual basis for the termination. The record before us contains the original petition for a determination of neglect and dependency. It states in full the conditions which led to the abuse and neglect adjudication, i. e., physical abuse of Angel which brought about her March 1973 hospitalization. Coupled with all this, testimony adduced by both parties in the termination proceedings dealt almost exclusively with the issue at hand. As conceded by the parents, via their appellate brief, "Possible child abuse in the future was the key. Dr. Spencer said it would be probable. Dr. Hastings said it might be possible, but not probable."

The second claim upon which these appealing parties seek a reversal is without merit.

V. This brings us to Longs' claim to the effect trial court erred in terminating their parental rights upon a "preponderance of the evidence" standard of proof rather than the "clear and convincing evidence" test. Although the former is dictated by statute § 232.46, Longs maintain the latter is mandated by procedural due process per *Alsager, 406 F.Supp. at 25.* There it was held the termination of family integrity may be effected only upon clear and convincing proof. And, as aforesaid, we apply the clear and convincing evidence precept on this de novo review. But see *Hernandez v. State ex rel. Arizona Dept. of Econ. Sec., 530 P.2d at 392–393.*

■ Upon that basis this court is persuaded and now holds the testimony adduced below clearly and convincingly supports, if not dictates, a termination adjudication. Although Dr. Hastings opined Angel should be placed in the Long home, he added such custody should not be restored without at least six months parental mental health training. This witness also noticeably agreed with the findings of his associate, Dr. Finkelstein, who reported Mr. Long "may still lash out angrily and harmfully" and further admonished the stepfather should not be allowed to baby-sit alone with Angel or her half brother. This is per se damaging, if not fatal, to Angel's future safety and well-being were the child to be placed within the self-evident hazards of the Long home.

Trial court also aptly found the parents constantly refused to admit they have any child abuse problems or need related treatment.

Additionally, Mrs. Long, seemingly the more stable of the two, denied any knowledge of Angel's original injuries. She further steadfastly denied her husband ever gets angry or loses his temper. Unquestionably, recognition of an existing child abuse problem is the first step toward correction and the Longs have repeatedly refused to acknowledge realities of the situation as related to Angel. Coupled with all this, the record clearly reveals Mr. Long has either refused counseling service or in any event failed to respond and is a continuing constant threat to Angel's well-being. Un-

der these circumstances, we will not gamble with the child's future; she cannot be made to await uncertain parental maturity. *In Interest of Vanderbeek,* 231 N.W.2d 859, 862 (Iowa 1975); *In Interest of Kester,* 228 N.W.2d at 110–111.

Parenthetically, the brief submitted by counsel for Angel urges a reversal of trial court's termination adjudication, for reasons advanced by the parents. Yet he manifests more than minimal concern as to Angel's safety by seeking a remand to juvenile court for further up-to-date proceedings.

Looking to the other side of the coin, it is axiomatic custody should be quickly fixed and seldom disturbed. *In re Interest of Kester,* 228 N.W.2d at 110. Even more to the point, children should not be made to suffer indefinitely in a parentless limbo. *In re Interest of Griffin,* 210 N.W.2d 665, 667 (Iowa 1973).

Admittedly, an affirmance will mean Angel is to be separated from her half brother. In that regard, this court has frequently said a brother and sister should not lose the benefit of constant association with one another except where circumstances so require. *In Interest of Wardle,* 207 N.W.2d 554, 565 (Iowa 1973).

In the case at hand, however, these children have seldom if ever associated as brother and sister. Angel has not actually resided in the Long home since her half brother was born. Moreover, the record discloses good and compelling factors which to us amply justify the separation of these siblings.

The termination adjudication from which this appeal is taken must stand.

AFFIRMED.