In the Interest of R.L.F., Minor Child.

Appeal of R.H., Father.

No. 88–1407.

Court of Appeals of Iowa.

Jan. 26, 1989.

Robert J. Rehan of Vakulskas & Hoffmeyer, Sioux City, for appellant father.

Thomas J. Miller, Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for the appellee State.

Paul Mahr, Sioux City, guardian ad litem for appellee child.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Judge.

The father of a Native American child appeals the termination of his parental rights. He contends that the evidence was insufficient to warrant termination under the federal Indian Child Welfare Act of 1978.

R.L.F., born December 12, 1985, is the child of J.R.J. and R.H. She was born out of wedlock. She lived in the sole custody of her mother for twenty-four days. She was removed from her mother's custody on December 26, 1985, by the Iowa Department of Human Services on the grounds that she was in imminent danger in her present living conditions. She was adjudicated to be a child in need of assistance shortly thereafter. She has been in the temporary care, custody and control of the DHS continually since December 26, 1985, and currently resides in a Native American foster home. J.R.J.'s parental rights were terminated in March 1987. She did not appeal from the termination order.

At the time of R.L.F.'s birth, R.H. was incarcerated in the Lincoln Correctional Center, Lincoln, Nebraska, and was scheduled to be released in November 1988. R.L.F. has never met her father or had any contact with him. In June 1988, the State filed a petition asking that R.H.'s parental rights be terminated. Upon hearing, the court terminated R.H.'s parental rights, relying on both Iowa Code sections 232.116(1)(b) and 232.116(1)(e). In addition, the juvenile court made a finding that termination was justified under the federal Indian Child Welfare Act of 1978, 25 U.S.C. § 1901 *et seq.*

R.H. has appealed from the termination of his parental rights. He contends that the evidence did not meet the standards for termination under the Indian Child Welfare Act. He argues the evidence did not establish beyond a reasonable doubt that his eventual custody of R.L.F. is likely to result in serious emotional or physical damage. He further argues that the State failed to present a qualified expert witness within the contemplation of the Act, and that the State failed to provide adequate remedial services and rehabilitation programs to him.

■ Our review of proceedings to terminate a parent-child relationship is de novo. We accord weight to the fact findings of the juvenile court, especially when considering the credibility of the witnesses the court has heard and observed first hand, but we are not bound by them. Our primary concern is the best interests of the child. We look to the child's long-range, as well as immediate, interests. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We consider what the future holds for the child if returned to his or her parents. *Id.* Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. *Id.*

■ The State must prove the allegations of the petition to terminate by clear and convincing evidence. *See Santosky v. Kramer,* 455 U.S. 745, 770, 102 S.Ct. 1388, 1402, 71 L.Ed.2d 599, 617 (1982). This includes the requirement that before the court may terminate the parental rights there must be clear and convincing proof that the child will suffer harm in a manner specified in section 232.2(6). *See In re Chad,* 318 N.W.2d 213, 219 (Iowa 1982). The child should not be forced to endlessly suffer the parentless limbo of foster care. *Long v. Long,* 255 N.W.2d 140, 146 (Iowa 1977). He or she need not endlessly await the maturity of his or her natural parent. *In Interest of T.D.C.,* 336 N.W.2d 738, 744 (Iowa 1983). Termination must occur·if enough time (twelve to eighteen months) has passed and the parent still cannot take care of the child. *Id.*

In the instant case, the district court terminated R.H.'s parental rights pursuant to Iowa Code sections 232.116(1)(b) and 232.116(1)(c) (Iowa Code Supp.1987). Section 232.116(1)(b) provides that parental rights may be terminated where the court finds that there is clear and convincing evidence that the child has been abandoned. Iowa Code section 232.2(1) defines "abandonment of a child" as:

> [T]he permanent relinquishment or surrender, without reference to any particular person, of the parental rights, duties or privileges inherent in the parent-child relationship. Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced. The term does· not require that the relinquishment or surrender be over any particular period of time.

The identical statutory definition of abandonment is found in a similar section of the Iowa Code, section 600A.2(16). The Iowa Supreme Court interpreted this definition of abandonment as the giving up of parental rights and responsibilities accompanied by an intent to forego them. *In Interest of Goettsche,* 311 N.W.2d 104, 106 (Iowa 1981). Iowa Code section 232.116(1)(c) permits the juvenile court to terminate parental rights if the child has been adjudicated in need of assistance, has been placed out of the parent's custody for more than twelve of the last eighteen months, and there is clear and convincing evidence that the child will suffer harm specified in Iowa Code section 232.2(6) (1987) if returned to the parent. *See In re K.L.C.,* 372 N.W.2d 223, 227 (Iowa 1985).

■ As we are dealing here with a child who has been certified as eligible for tribal enrollment with the Santee Sioux Indian Tribe, the Iowa statutory and case law are modified in these termination proceedings by the provisions of the Indian Child Welfare Act of 1978, Title 25, U.S.C.A., section 1901, *et seq.* Specifically, 25 U.S.C.A. section 1912(f) provides that:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

The court in this case applied the above standard and concluded that the statutory grounds for termination were supported by evidence beyond a reasonable doubt. Upon our review of the record, we agree with this conclusion. We are dealing here with a father who has never met his child and has had absolutely no contact with her. During his imprisonment he has not attempted any correspondence with R.L.F., despite being given the opportunity to do so, and has failed to provide any financial support for her. Other than a generalized interest in the child, R.H. has made no effort to assume a place of importance in R.L.F.'s life, and has continuously refused the assistance of the DHS and the courts. "Parental responsibilities include more than subjectively maintaining an interest in

a child. The concept requires affirmative parenting to the extent it is practical and feasible in the circumstances." *Interest of Goettsche*, 311 N.W.2d at 106.

We also agree with the court's reliance on Iowa Code section 232.116(1)(e) as a ground for termination. The record indicates that R.H., 31 at the time of trial, has spent at least ten years of his adult life incarcerated. He has been previously convicted of criminal trespass, public intoxication, aggravated robbery, burglary, assault while participating in a felony, and assault with intent to commit murder. At the time of trial, he was serving a sentence for possession of burglary tools and had been placed in the segregated confinement unit of the prison, due to his inability to live in the general prison population. According to a letter from a prison counselor, R.H. could not be an effective custodial parent for several years and would require extensive counseling in such areas as parenting skills, anger control, substance abuse, vocational training, and basic life skills. It is clear from the record before us that R.H. is in need of extensive help in order to provide him with the most basic parenting and living skills and R.H.'s history convinces us, beyond any reasonable doubt, that R.L.F. would be imminently likely to suffer harmful emotional and physical effects should R.H. be allowed to assume a parenting role. Although R.H. has never had actual physical custody of the child, we note that:

> [a] termination proceeding is not like a personal injury action where an injury must be proved before damages may be recovered. The termination statute is preventative as well as remedial. The statute mandates action to prevent probable harm to children and does not require delay until the harm is done.

*Interest of Kester*, 228 N.W.2d 107, 110 (Iowa 1975).

R.H. further argues that the court's decision to terminate was not based on testimony of a "qualified expert" within the meaning of the Indian Child Welfare Act. He argues that DHS case worker Linda Vogel, who recommended termination, was not a qualified expert because she is not a member of R.L.F.'s tribe and does not have substantial experience with the delivery of child and family services to Indians. Regardless of the merit of his contention, R.H. failed to preserve error as to the trial testimony of DHS case worker Vogel due to his failure to object to her testimony. Consequently, his failure to object operates as a waiver of any improprieties in the testimony. *State v. Johnson*, 272 N.W.2d 480, 483 (Iowa 1978).

R.H. finally argues that the State failed to meet its requirement of making "active efforts" in providing him with remedial services and rehabilitative programs. We find this claim to be without merit. The record clearly indicates that the State made every effort to contact R.H. and attempted to provide him access to therapy and counseling services.

We see no reason to delay the termination of R.H.'s parental rights any further. R.L.F. should not be forced to endlessly suffer the parentless limbo of foster care. *See Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977). She need not endlessly await the maturity of her father. *Interest of T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). The termination order is affirmed.

AFFIRMED.