**In the Interest of J.W., B.W., T.W., K.W. and R.W., Minor Children.**

**D.H. and G.W., Objectors, Appellants.**

**No. 92–1079.**

Court of Appeals of Iowa.

Feb. 2, 1993.

Teresa A. O'Brien of Forker & Kanter, Sioux City, for appellant G.W.

Bradford F. Kollars, Sioux City, for appellant D.H.

Debra Y. Lulf, Sioux City, guardian ad litem for minor children.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Marleen Loftus, Asst. County Atty., for appellee.

Heard by DONIELSON, P.J., and SACKETT, J., and KEEFE, Senior Judge.*

SACKETT, Judge.

A biological mother with Native American blood, Gayle Wake[1] appeals a trial court order terminating her parental rights to her five children, born in 1982, 1986, 1988, 1990, and 1991. Dennis Howard,[2] the biological father of Katherine Wake–Howard[3] born in 1990, and Raymond Wake–Howard[4] born in 1991, joins in the appeal. The rights of the fathers of the three older children are not at issue in this appeal.

Gayle and Dennis contend (1) the notice to the Indian tribes was not in compliance with the Indian Child Welfare Act, (2) the facts did not establish by clear and convincing evidence, or beyond a reasonable doubt, that continued custody of the children by Gayle and Dennis would likely result in their serious emotional or physical damage pursuant to the Indian Child Welfare Act, (3) the facts did not establish beyond a reasonable doubt that they had severe and chronic substance abuse problems which presented a danger to themselves and others as evidenced by prior acts, and (4) the trial court erred in denying their motion for a new trial. We find there has not been compliance with the Indian Child Welfare Act. We remand to the trial court with directions to comply with the Indian Child Welfare Act. We do not retain jurisdiction.

In 1978, Congress, recognizing an alarmingly high percentage of Indian families are broken up by removal of their children who are then placed in non-Indian foster and adoptive homes and institutions, determined it be the policy of the Nations to

---

* Senior Judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

1. G.W. are the biological mother's initials. Gayle Wake is not her given name.

2. D.H. are the initials of the biological father of two of the children. Dennis Howard is not his given name.

3. K.M.W.–H. is the child's initials. Katherine Wake–Howard is not her given name.

4. R.W.–H. are the child's initials. Raymond Wake–Howard is not his given name.

establish minimum federal standards for removal of Indian children from their families. *See* 25 U.S.C.A. §§ 1901, 1902 (West 1983). The Act specifies a number of requirements that need to be complied with before removing Indian children from their Indian family and/or terminating parental rights. *See* 25 U.S.C.A. §§ 1911, 1912, 1913 (West 1983). The Iowa statutory and case law are modified in this termination proceeding by the provisions of the Indian Child Welfare Act of 1978, as amended. *See In re R.L.F.*, 437 N.W.2d 599, 601 (Iowa App.1989).

The evidence is undisputed that the mother is both a member of the Omaha Tribe and one-half Santee, thereby eligible for membership in the Santee Tribe.

Section 1903(4)(b) provides:

"Indian child" means any unmarried person who is under age eighteen and is either ... (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe;

25 U.S.C.A. § 1903(4)(b) (West 1983).

These children are unmarried and not yet eighteen years old. They are eligible for membership in two Indian tribes and are the biological children of a tribe member. They are Indian children as defined by the Act. The provisions of the Indian Child Welfare Act clearly applies to this case.

The parents contend the proceedings in the juvenile court resulting in termination of their parental rights did not follow the dictates of the Indian Child Welfare Act. The State advances this argument was not preserved for appellate review. We find the issue was preserved.

■ We also find it would be irresponsible for this court not to assure the provisions of the Act were followed. For if the Iowa proceedings fail to comply with the Indian Child Welfare Act, there is a serious risk subsequent proceedings may be brought for invalidation of the termination order under section 1914 which provides:

Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C.A. § 1914 (West 1983).

It appears to be the intent of these proceedings to place these children for adoption. If we were to affirm a termination order not in compliance with the Act, the State could offer prospective adoptive parents no assurance this termination and a subsequent adoption could not be invalidated. *See In re H.D.*, 11 Kan.App.2d 531, 538, 729 P.2d 1234, 1241 (1986) (violation of Indian Child Welfare Act notice cause for invalidation of termination).

■ Furthermore, there is authority supporting a finding the Act is jurisdictional and failure to give adequate notice to the tribes divests a state court of jurisdiction. The South Dakota Supreme Court in addressing the issue of compliance with the Act on its own motion said:

The Indian Child Welfare Act is primarily a jurisdictional statute, Act of Nov. 8, 1978, Pub.L. No. 95–608, 1978 U.S.C.C.A.N. (92 Stat.) 7530, 7541; J. McCahey, *Child Custody & Visitation Law and Practice*, § 29.03(4) (1987); *see In re N.A.H.*, 418 N.W.2d 310, 311 (S.D. 1988); and this court must examine jurisdictional questions whether presented by the parties or not. *Lehr v. Dep't of Labor of S.D.*, 391 N.W.2d 205, 206 (S.D. 1986); *Long v. Knight Const. Co.*, 262 N.W.2d 207, 209 (S.D.1978). Therefore, even though mother did not raise the notice question on appeal, we conclude that inadequate notice to the tribes divests the trial court of jurisdiction to terminate parental rights to these Indian children; consequently, this court has no jurisdiction to address the merits of the case....

*In re N.A.H.*, 418 N.W.2d 310, 311 (S.D. 1988).

As one commentator on the Indian Child Welfare Act explains:

The right to intervene also is virtually meaningless unless notice of the proceed-

ings is prompt and reliable and unless placements that have been made without adequate notice can be reversed. The Act expressly provides for reversal. If denied notice or the opportunity to intervene, the child's parent or tribe may petition for new proceedings.

R. Bash, *The Indian Child Welfare Act of 1978: A Critical Analysis*, 31 Hastings L.J. 1287, 1314 (1980); *In re S.Z.*, 325 N.W.2d 53, 57 (S.D.1982).

We next must determine whether these proceedings are in compliance with the provisions of the Indian Child Welfare Act. The State appears to recognize the proceedings were not in technical compliance. The State argues only that the proceedings are in substantial compliance.

The parents contend the Omaha and Santee tribes were not notified in the manner and method required by the Act. As to notice, the Act provides:

> In an involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided,* That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

25 U.S.C.A. § 1912(a) (West 1983).

To address this issue, we need to review a history of the child in need of assistance proceedings.

On June 16, 1989, Gayle left two of her children with a child care provider. Gayle said she would return for the children on June 17. On June 17, Gayle contacted the provider and said she would be late. Gayle did not return on June 18, the police were contacted, and the two children were placed in emergency foster care. According to the notes of a child protective services worker, a judge of the Omaha tribal court was called on June 20, 1989. A temporary removal hearing was held on August 17, 1989, and Gayle's three children were placed in foster care.

On September 18, 1989, at a dispositional hearing, the trial court found temporary care, custody, and control of the minor children should be transferred to the Iowa Department of Human Services for placement in foster care.

On June 27, 1990, a hearing for emergency removal of Gayle's newborn child was held. The child was placed in foster care.

On September 19, 1990, a dispositional review hearing was held concerning the three older children, and it was consolidated with a dispositional hearing concerning the baby. The trial court ordered the care, custody and control of the three older children remain with the Department of Human Services for continued placement in foster care and custody and control of the baby be transferred to the Iowa Department of Human Services for placement in foster care.

On May 23, 1991, another emergency removal order was filed, following the birth of a fifth child. A hearing was held on June 3, 1991, and he was also placed in foster care because of the mother's chemical abuse and the fact that four previous children had been removed from her custody.

The State acknowledges this was the first time an Indian tribe was notified in writing. In this case there is a filing captioned, "Proof of Mailing to Omaha Tribe for Emergency Removal Petition on R.W.H." Attached to the filing is a post

office receipt showing an article mailed by registered mail to the tribe and signed for by an agent on June 4, 1991. (June 4, 1991, was a day after the hearing on the petition for temporary removal.) There is no affidavit by a person identifying who made the mailing to the tribe and/or showing what was mailed to the tribe.

On October 7, 1991, the trial court held the Indian Child Welfare Act did apply to Gayle's children.

On November 18, 1991, a petition for termination of parental rights was filed on behalf of the five children. The petition alleged the children are Indian children within the meaning of the Indian Child Welfare Act. In this case there is a filing captioned, "Proof of Mailing For Termination of Parental Rights and Indian Notice." Attached to the filing is a post office receipt showing an article mailed to the Omaha Tribe by registered mail from the assistant county attorney in Sioux City that was signed for by an agent of the tribe on November 20, 1991. There is no affidavit by a person identifying who made the mailing to the tribe and showing what was mailed to the tribe. The Omaha Tribe did not appear.

A hearing was held in February 1992, and the trial court terminated the parental rights of Gayle as to all her children, and the parental rights of Dennis as to Katherine and Raymond. The trial court also terminated the parental rights of the natural fathers of the other children.

Clearly, the letter and the spirit of the Indian Child Welfare Act were not followed.

The next question is whether the State is correct in arguing there was substantial compliance.

■ The State argues notice was not necessary for emergency removal. We agree. The Indian Child Welfare Act, in applicable part, also provides:

Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reserva-

tion, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child. The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.

25 U.S.C.A. § 1922 (West 1983); *see also D.E.D. v. State,* 704 P.2d 774, 779 (Alaska 1985).

It was not necessary to comply with the notice provisions of the Act when on June 18, 1989, two children were placed in emergency care or on June 27, 1990 and May 23, 1991, when emergency orders were entered. However, these were the only proceedings exonerated from notice under section 1922.

■ The State contends it was in substantial compliance with the Act because it notified the Omaha Tribe of an emergency removal and the termination hearing. There are several flaws in the State's argument. First, there is no acceptable proof of service of a notice by mail. All that was filed was a certified mail receipt. No copy of what was mailed was attached. No affidavit was filed verifying what was mailed.

■ Even if the termination petition were sent to the Omaha Tribe (and we cannot ascertain it was), there is no showing the tribe was advised of its right to intervene as required by section 1912(a).

■ The provisions of Indian Child Welfare Act are to be strictly construed and applied. *See Mississippi Choctaw Indians v. Holyfield,* 490 U.S. 30, 50–51, 109 S.Ct. 1597, 1609, 104 L.Ed.2d 29, 47–48 (1989).

The Omaha Tribe should have been notified in accordance with section 1912(a) of proceedings resulting in the children being placed in foster care, except the emergency removal placements. The Omaha Tribe should have been notified of the termination hearing in accordance with the dictates of section 1912(a). They were not.

■ The Santee Tribe has been totally ignored in these proceedings.

The State argues notice to the Santee Tribe is not necessary. The State contends the Santee Tribe is not entitled to notice because the Indian Child Welfare Act provides only one tribe can be a child's tribe. The Indian Child Welfare Act, in applicable part, provides:

> "Indian child's tribe" means (a) the Indian tribe in which an Indian child is a member or eligible for membership, or (b) in the case of an Indian child who is a member of or eligible for membership in more than one tribe, the Indian tribe with which the Indian child has the more significant contacts.

25 U.S.C.A. § 1903(5) (West 1983).

■ We agree with the State, the children ultimately can have but one tribe. However, there is evidence the children are eligible for membership in two tribes and have not been accepted as members of either tribe. They could be accepted for membership in either tribe. Notice should be given to both tribes. The tribes are the arbitrators of their own membership. *See In re M.C.P.*, 153 Vt. 275, 287, 571 A.2d 627, 634 (1989).

We reverse the order terminating parental rights and remand for a new hearing after proper notice is given. We do not retain jurisdiction. The State is directed to the Bureau of Indian Affairs guidelines set forth at 44 Fed.Reg. 67588 (1979). *See N.A.H.*, 418 N.W.2d at 311.

**REVERSED AND REMANDED.**