**In the Interest of F.M. and A.J.O., Children.**

**M.M.O., Natural Mother, and F.O., Natural Father of A.J.O., Appellants.**

No. 92–1978.

Court of Appeals of Iowa.

June 29, 1993.

Nancy L. Burk, Toledo, for appellants.

Bonnie J. Campbell, Atty. Gen., John S. Parmeter, Special Assistant Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee-State.

Richard S. Bordwell, Bordwell Law Office, Washington, guardian ad litem, for minor children.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

The focal question in this appeal is whether there is clear and convincing evidence to support the juvenile court's decision to terminate the parental rights of parents with limited mental abilities to their two children born in 1988 and 1990.

The parents contend (1) there is not clear and convincing evidence the children cannot be returned to them, but if there is, (2) the case should be reversed because the parents' limited intellectual and mental capacities prevent them from accomplishing the level of parenting skills the State requires and the relationship should not be terminated. We affirm.

Our review of a termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied, sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

These parents clearly suffer mental handicaps. The mother was put in special education in third grade and quit school in the eleventh grade. She has been diagnosed as having a lack of intellect and a deficient IQ which is in the mid–60's. She has restricted insight and limited social and learning skills. The father has reached the fourth grade level of learning and, with an IQ of 74, functions at the borderline range. He can read only simple words and do simple addition and subtraction but not multiplication and division. He has limited ability to gain from academic training. Both parents live at the poverty level and apparently had no family support with parenting.

The children were removed because the parents did not keep an adequate home and were not able to meet the nutritional needs of the children. Both parents clearly love their children. There is no evidence either parent has sexually or physically abused the children. The state offered parenting assistance both before and after the children were removed from the parents' care. Clearly, the parents were not able to assimilate the training and function at the level required by the service providers for the children's return home. A recitation of the problems would serve no useful purpose. A number of the problems were related to or the result of the parents' limited intellectual abilities. The juvenile court found the parents' limited abilities were a substantial factor in the decision to terminate. We agree with this finding of the trial court.

The children cannot be returned to either parents' care without a number of services being made available to the parents; not just on return, but during the children's minority. The children could be left in permanent foster care and the parents could maintain their parental rights.

There are two questions. One is what obligation the State has to assist these mentally handicapped parents retain their legal rights to their children, and the other is how do we balance the needs of the children for adequate care and nurturing with the parents' rights to parent.

Legal procedure to terminate the parental rights of parents who wish to retain their legal ties to their children are procedures of recent origin. We, therefore, go forward with little historical direction. The fragmen-

tation of the American family has thrust upon the State responsibilities for families that in prior times were frequently assumed by extended family members. Termination of parental rights is being implemented as a solution to these problems. When a handicap such as these parents suffer renders them incapable of adequately caring for their children, what responsibility does and should the government have to assist in providing services to allow them to enjoy the same rights and privileges of parenting?

The parents in this case raise no constitutional challenges. The Iowa Supreme Court has said a parent's mental disability is a proper factor to consider in determining whether a child is neglected and his or her welfare requires termination. *In re J.W.D.*, 456 N.W.2d 214, 218 (Iowa 1990); *In re A.M.S.*, 419 N.W.2d 723, 733–34 (Iowa 1988). We look to cases where this court has found termination of parental rights of the mentally handicapped should not occur and these decisions have been vacated. *J.W.D.*, 456 N.W.2d at 219; *A.M.S.*, 419 N.W.2d at 734.

Following the precedent set by these decisions, we affirm the termination.

**AFFIRMED.**

DONIELSON, P.J., concurs.

HABHAB, J., specially concurs.

HABHAB, Judge (specially concurring).

I concur in the result only.