**In the Interest of C.D., A.D., and A.D., Minor Children, C.D., Mother, Appellant.**

No. 94–324.

*Court of Appeals of Iowa.*

Sept. 16, 1994.

Lisa A. Engh of Hayek, Hayek & Brown, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Judy A. Sheirbon, Asst. Atty. Gen., and Deborah Farmer Minot, Asst. County Atty., for appellee State.

John Priester, Asst. Public Defender, Iowa City, for minor children.

No appearance for the father.

Considered by Hayden, P.J., and Habhab and Cady, JJ.

HAYDEN, Presiding Judge.

Chris is the mother of four children: Amanda, born January 31, 1988; Charlie, born February 13, 1990; and twins Ashley and Amber, born June 3, 1991. The father, Charles, consented to the termination of his parental rights and has not appealed. The instant proceedings do not involve the child, Amanda. This family came to the attention of the Iowa Department of Human Services (DHS) in 1989 when Amanda was left alone. Services were provided to the family.

When Charlie was five months old he was hospitalized and diagnosed with failure to thrive due to environmental factors. In December 1990 Charlie was again hospitalized for profound failure to thrive. His parents consented to his placement in foster care. Charlie was adjudicated a child in need of assistance (CINA) on January 28, 1991, and his placement in foster care was continued by dispositional order of March 25, 1991.

Ashley and Amber were born prematurely. They were voluntarily placed in foster care upon their release from the hospital. The twins were adjudicated CINA on July 7, 1991. A dispositional hearing was held in August, and on December 3, 1991, a dispositional order continued their placement in foster care.

Chris, Charles, and Amanda continued to receive extensive services, including the Hawkeye Area Community Action Program's (HACAP) transitional program, which provides housing and services to families for up to two years to learn the necessary skills to live independently. The parents made significant progress at providing a stable environment. On February 3, 1992, the juvenile court entered a review order returning Charlie to their home. The juvenile court opined it would be prudent to allow a period of adjustment before the twins were also returned.

On May 1, 1992, the juvenile court ordered Ashley and Amber returned to their parents. The family continued to receive extensive services from Lutheran Social Services and HACAP.

In August 1992 Charlie was reevaluated, found to be moderately developmentally de-

layed, and had a low weight gain. In September 1992 HACAP recommended the family be discharged from the program and evicted from the transitional housing because of a failure to follow through with services. In October Chris left Charles and moved into a domestic violence shelter with the children. On November 13, 1992, the twins were placed in foster care pending a modification hearing.

On November 23, 1992, the juvenile court entered a review order finding the twins were suffering from failure to thrive and ordering them to remain in foster care. By order dated December 23, 1992, Charlie was placed in foster care following the Christmas holidays as a diagnostic tool to determine whether he suffered from failure to thrive. A modification hearing was held, and on June 7, 1993, Charlie's custody was transferred to DHS for foster care. Chris moved out of the shelter in June 1993 and did not maintain regular contact with her service providers. Petitions to terminate parental rights concerning Charlie, Ashley, and Amber were filed in October 1993.

A termination hearing was held on January 14, 15, and 26, 1994. Evidence was presented the children were in desperate need of stability and above-average parenting. There was testimony by Carol Conner, director of HACAP, Chris had recently made some progress and displayed a new "maturity." However, her most positive testimony was Chris could never handle Charlie because of his special needs, but she might be able to handle the twins if returned separately. Since 1989 Chris has been provided extensive services. There is no service which could be provided that has not already been offered. Despite the many services, even Chris testified she could not handle all four children in the home.

On February 1, 1994, the juvenile court ordered Chris's rights to Charlie, Ashley, and Amber be terminated. Chris appeals. She argues only there is not clear and convincing evidence the children cannot be returned to her.

Iowa Code section 232.116(1)(g) (1993) permits the juvenile court to terminate the par-

ent-child relationship if the court finds all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

■ Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom., J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985) (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *Dameron*, 306 N.W.2d at 745.

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App. 1988) (citing *Dameron*, 306 N.W.2d at 745).

■ We determine the juvenile court properly found, by clear and convincing evidence, the mother's parental rights should be terminated pursuant to Iowa Code section 232.116(1)(g) (1993). This decision is due to

the mother's limited parenting abilities, the children's special needs, and the length of time in foster care. The evidence in this case overwhelmingly supports the juvenile court's termination order.

The evidence at trial set forth the numerous services available to and received by the mother and children since 1990. These services include family preservation services, parenting skill training, educational assistance for Chris and the children, extensive medical care, protective day care, Head Start, speech therapy, visiting nurses, diagnostic and regular foster care, and visitation services. Despite these many services, Chris testified she could not handle all four children in the home.

■ The juvenile court properly considered the mother's limited intellectual functioning as it affected her ability to meet the needs of these children. Iowa Code § 232.116(2) (1993); *see also In re F.M.*, 506 N.W.2d 463, 465 (Iowa App.1993) (clear and convincing evidence of mental disabilities of each parent supported termination of parental rights). "Every child deserves a safe, healthy, and stimulating environment in which to grow and mature." *In re J.W.D.*, 456 N.W.2d 214, 217 (Iowa 1990) (parent's mental disability is proper factor to consider in determining whether child is neglected and his or her welfare requires termination).

The mother cites the testimony of the HACAP worker, Ms. Conner, who indicated she recently has seen some maturity in the mother. Ms. Conner suggested possibly one twin could be returned to the mother on an experimental basis. We note Ms. Conner has not provided services to the mother since September 1992 when the family was evicted from the transitional housing. Ms. Conner indicated when the children were returned to the parents in 1992 there were frequent concerns from neighbors and the providers about the children being kept in bed for hours during the day and insufficient nutrition. Ms. Conner gave her opinion the mother could never properly parent Charlie and she would be very concerned about separating the twins. There was conflicting testimony to the effect this plan would not be in the children's best interests, nor was it an option

supported by evidence. The testimony was clear the fragile natures of these three children weighed strongly against trying to return them to parental custody.

The evidence demonstrates termination is in the children's best interests. Not only is a termination necessary in order to get their developmental needs met, but the evidence also proves these three children are adoptable. The twins and Charlie are not strongly bonded to each other or Amanda. They were in separate foster homes from Amanda during their lengthy placements. The twins' foster parents are willing to adopt them, and other persons have indicated an interest in adopting Charlie. There was testimony allowing ongoing contact between these siblings will be a major factor in locating proper adoptive replacements.

■ The legislature has determined the interval for which patience with parents may last. "This period must be reasonably limited because patience on behalf of the parent can quickly translate into intolerable hardship for the children." *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (citation omitted). A child should not be forced to endlessly suffer the parentless limbo of foster care. *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990); *Long v. Long*, 255 N.W.2d 140, 145–46 (Iowa 1977). He or she need not endlessly await the maturity of his or her natural parent. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). "Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). To continue to keep children in temporary foster homes is not in their best interests. *In re J.L.P.*, 449 N.W.2d 349, 353 (Iowa 1989) (citations omitted).

We affirm the juvenile court's order terminating both parents' rights to the three younger children. This will provide the children the opportunity to be placed in adoptive homes which will meet their needs and let them reach their potentials in growth and development.

Judgment of the juvenile court is affirmed.

**AFFIRMED.**