In re In the Interest of John Shelby GRIFFIN, Jr., a child.

No. 55940.

Supreme Court of Iowa.

Sept. 19, 1973.

Philip F. Miller, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Special Asst. Atty. Gen., Larry Munsinger, Asst. Atty. Gen., Charles D. Stinard, Asst. County Atty., and Patrick Payton, West Des Moines, for appellees.

Heard before MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

The father appeals an order terminating the parent-child relationship with his son. We affirm.

On January 29, 1970 the trial court adjudged John Shelby Griffin, Jr. (John) to be neglected. John was then only 14 months old but was already the victim of great misfortune. He had a serious health problem with heart surgery a likely possibility. His immature parents were locked in domestic warfare in preparation for the dissolution which followed. His mother, who has not appealed termination as to her, was emotionally unstable. His father had embarked on a life of crime.

The circumstances requiring the trial court to then undertake John's protection were succinctly described by his father's attorney at the time. After conceding the father's "limitations in connection with the care of this child," counsel claimed the father loved the child and had attended his physical needs. He conceded as much for his mother. He went on to say: "We have no quarrel in that respect, but there is a much more important and much more serious problem involved here and that is the moral and psychological and sociological needs of this child. Here is a young child that has yet to develop the patterns that will govern his whole conduct during a lifetime. * * *." After insisting John's mother could not "supply to the child the kind of moral, emotional * * * stability that a child needs to grow up with," he made the following significant concession: "(The father) recognizes that he is not capable of supplying the child with this most needed stability and continual training for adult life, and his concern, Your Honor, as is mine, is that this child be placed in an atmosphere where he can grow up to become a normal and good citizen. * * * And we * * * are willing to cooperate with the Court and Probation Department in any way * * * we can to assist them * * * in making a proper placement, either with friends or with complete strangers as the child's needs may best be served."

The father's lack of capacity to supply John with "this most needed stability" was manifested in various ways. During his marriage to John's mother he had intermittently carried on a romance with a former girlfriend. In somewhat casual meanderings between jobs and homes in Minneapolis and Des Moines he demonstrated a calloused indifference to the most fundamental needs of John or his mother. The most important facet of the father's incapacity was in his criminal activity.

The father's adult criminal record began in 1958 with a conviction under the Dyer Act for which he served 27 months during 1958, 1959 and 1960. During the year following his release he was convicted of robbery with aggravation for which he served four years of a 25 year sentence.

There was ample evidence to support the trial court's initial finding of neglect. No appeal was taken from this order, entered

January 29, 1970. John was released to the Polk County Juvenile Home into the custody of Charles L. Beebe and Collette Beebe of Prairie City, Iowa, under the supervision of probation officers of the trial court. Both parents were accorded visitation rights and both were ordered to pay minor amounts for the weekly support of John.

On February 23, 1972 the petition to terminate was filed, alleging two grounds as to the father. As provided by section 232.-41(2)(e), The Code, "(t)hat following an adjudication of neglect * * *, reasonable efforts under the direction of the court have failed to correct the conditions leading to the termination." As an alternative ground it was alleged, as provided by section 232.41(2)(a), the father had abandoned the child. Under section 232.41 either ground would have authorized termination. The trial court found both grounds were established. In affirming, however, we do not reach the claim of abandonment but base our decision solely on the first ground.

I. We have recently reviewed the governing principles in parent-child termination cases:

"This Court has repeatedly stated that in matters of this kind the primary consideration is the welfare and best interests of the child. While there is a presumption that the best interests of the child will be served by leaving it with its parents, this is not conclusive. The State, as parens patriae, has the duty to see that every child within its borders receives proper care and treatment. (Authorities)." In Interest of Wardle, 207 N.W.2d 554, 556 (Iowa 1973).

We adopt the description given by the father's own counsel as to the conditions leading to termination. It was the inability of either parent to "supply the child the kind of moral, emotional * * * stability that a child needs to grow up with." In its order of neglect the trial court directed the reasonable efforts to correct those conditions. Under those directions the father could develop moral, emotional stability adequate for his son's needs. He could demonstrate this development in part by providing $10 weekly support and by visiting his son. In addition he obviously could make himself available for the responsibilities of fatherhood by staying out of prison.

The father's conduct since the adjudication of neglect has demonstrated his response to the court's directions. He has paid nothing for the support of the child. His pursuit of crime in preference to the family life has continued unabated. He was convicted in federal court of harboring a fugitive from justice for which he is serving a five year sentence. His chances of parole were described at trial as unlikely. He was wanted by authorities in Idaho for armed robbery. The father was not even sufficiently interested in the termination proceedings to forward his counsel information sought for his own defense against termination. The conditions which required the adjudication of neglect have obviously not been corrected. The trial court was right in ordering termination.

The trial court based the termination in part on the additional ground of abandonment. Although we do not determine whether the father's conduct amounts to abandonment we feel called upon to reiterate a familiar principle in custody cases. Determination is not made as punishment to either parent. Alex v. Alex, 161 N.W.2d 192 (Iowa 1968). It is a fearful thing to terminate the relationship between a parent and child. As punishment it would obviously be too severe and cruel for any crime. Our considerations are completely aside from punishment and are grounded solely on our view of the polestar in these matters: the best interests of the child.

This child should no longer suffer in a parentless limbo while his father continues to foster the intolerable conditions the father brought about.

Affirmed.