**In the Interest of Lynette R. KESTER and Robert J. Kester, Children,**

**Cheryl Kester, Appellant.**

**No. 2–57497.**

Supreme Court of Iowa.

April 16, 1975.

Robert W. Brinton, Clarion, for appellant Cheryl Kester.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Asst. Atty. Gen., and William A. Long, Eagle Grove, for appellee State of Iowa.

Larry E. Ivers, Clarion, for appellee children.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

This is an appeal by the mother from a trial court decree terminating the parent-child relationship between two children and their natural parents. We affirm.

The children involved are Lynette R. Kester, age 5, and Robert J. Kester, age 4. The parents are Robert and Cheryl Kester, who married in 1968 and were still married at the time of trial.

The action was commenced by a petition filed by the Wright County Attorney April 8, 1974, alleging three grounds for termination of the parent-child relationship. These grounds were based on § 232.41(2)(a), (b), and (d), The Code. Those provisions are:

"The court may upon petition terminate the relationship between parent and child:

\* \* \* \* \* \*

2. If the court finds that one or more of the following conditions exist:

a. That the parents have abandoned the child.

b. That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection.

\* \* \* \* \* \*

d. That the parents are unfit by reasons of debauchery, intoxication, habitual use of narcotic drugs, repeated lewd and lascivious behavior, or other conduct found by the court likely to be detrimental to the physical or mental health or morals of the child."

The father, residing in Montana, was duly served with notice of the termination proceeding but elected through counsel not to appear and resist the petition. The mother, incarcerated in the Women's Reformatory at Rockwell City, did appear with appointed counsel and resist. Attorney Larry E. Ivers was appointed to represent the children.

Evidence was taken on two days in June 1974. The trial court filed findings of fact, conclusions of law, and the decree of termination on July 22, 1974. The court found the evidence was sufficient to sustain all three grounds for termination.

The determinative question in the mother's appeal is whether the evidence is sufficient to justify termination of her parental relationship with the children on any of these grounds.

■ Principles governing our review are explained in In Interest of Wardle, 207 N.W.2d 554, 556–557 (Iowa 1973). Review is de novo. The best interests of the children are paramount. The presumption that the interests of children are best served by leaving them with their parents must give way when it conflicts under the evidence in a given case with the State's duty to see that every child within its borders receives proper care and treatment:

■ We believe the evidence is sufficient in this case to require termination on the ground of the mother's substantial and continuous refusal to give the children necessary parental care and protection. § 232.-41(2)(b), The Code. We do not reach the issue of the sufficiency of the evidence on the other two grounds relied on by the State.

Cheryl was 18 when she married Robert Kester in 1968. Lynette was born in 1969, and Robert in 1970. By 1970 the parents were involved with drugs. Cheryl developed a drinking problem and on occasion used marijuana, LSD, and heroin.

By 1971 the county department of social services was receiving complaints that the children were being neglected. The parents separated. Cheryl started receiving Aid to Dependent Children benefits. She also commenced a relationship with James Bakey.

In August 1971 Cheryl was convicted of disturbing the peace and sentenced to 14 days in jail. The children were placed in foster care and remained there until November 1971 when they were returned to her. A neighbor testified that Cheryl had numerous male visitors at various times of the day and night during two months in the winter of 1971–1972. Sometimes one, two, or three of them would stay overnight. The neighbor said the children were occasionally left alone for several hours at a time.

In February 1972 Cheryl left the children for about two months with her mother, who had a drinking problem. Cheryl and James Bakey traveled through several states, ostensibly looking for work and a place to live. Subsequently they took the children and lived with them as a family in Minnesota, Montana, and Iowa, until February 1973.

In February 1973 Cheryl, Robert Kester, and one Jim Schroeder committed robbery of an Estherville hotel. Bakey was present but not charged. At that time the children were with Cheryl's aunt and uncle. After Cheryl's arrest her mother took them. Cheryl has not had the children since then. Cheryl spent about a month undergoing evaluation in the mental health institute at Cherokee.

In April 1973 Cheryl was convicted on a felony charge of uttering a false check in Estherville in February 1973. She was later given an indeterminate seven-year penitentiary sentence and placed on probation.

In June 1973 Cheryl was involved with Jim Schroeder in robbery of a jewelry store in Dickinson County. Shortly thereafter the Wright County Attorney filed petitions alleging that the children were dependent and neglected. Various subsequent hearings were held on these petitions.

In August 1973 Cheryl was committed to the Women's Reformatory for a term not to exceed ten years on the Dickinson County robbery offense and a concurrent term of not to exceed seven years based on revocation of probation on the false check offense.

In October 1973 the juvenile court in Wright County took the children from Cheryl's mother and placed them in temporary custody of the county department of social services. They have remained in foster care since then.

In December 1973, while home on furlough, Cheryl decided not to return to the reformatory. She absconded to Montana with her husband but ended up with Bakey in South Dakota. In February 1974 she was apprehended in South Dakota and was returned to the reformatory.

In the June 1974 termination proceeding, Cheryl said she loved the children and did not want to lose them. She said she planned to terminate her marriage to Kester, marry Bakey, go to beauty school, and make a home for Bakey and the children. A reformatory counselor and a reformatory administrator gave affidavits which were received in evidence. The affidavits emphasized Cheryl's native ability, her interest in the children, and the sincerity of her expressed plan to change her behavior.

A social worker for the county department of social services recommended termination of the parent-child relationship so a permanent placement of the children could be made.

Since August 1971 Cheryl has had possession of the children for no more than about 13 months. They have spent about 31 of the last 44 months with various foster parents. They have now been out of Cheryl's care for more than two years. When the children were with her, she did not provide them with a healthy mental and moral atmosphere. For most of their lives she has been more interested in self-gratification.

■ In the context of child custody problems we have frequently said custody should be quickly fixed and little disturbed. See, e. g., Stouwie v. Stouwie, 222 N.W.2d 435, 438 (Iowa 1974). This principle inheres in the ground of termination involved here, permitting termination when parents have substantially and continuously refused to give a child necessary parental care and attention. § 232.41(2)(b), The Code. Children should not be made to suffer indefinitely in a parentless limbo. In re Interest of Griffin, 210 N.W.2d 665, 667 (Iowa 1973).

Cheryl contends she should be given another chance. She argues it has not been proven that the children have been damaged by what has happened. We recognize the severity of termination. See In re Interest of Griffin, supra. In appropriate cases we have refused termination in order to give parents additional opportunity to fulfill their responsibilities. See In Interest of Wardle, supra; In re Interest of Yardley, 260 Iowa 259, 149 N.W.2d 162 (1967). However, this is not that kind of case.

■ A termination proceeding is not like a personal injury action where an injury must be proved before damages may be recovered. The termination statute is preventive as well as remedial. The statute mandates action to prevent probable harm to children and does not require delay until after the harm has been done.

We do not know how long Cheryl will remain in prison. We do not know whether she will rehabilitate her own life after she is released. We do know she has refused by her past conduct over a period of five years to provide her children with necessary parental care and attention. As observed in Re Interests of Morrison Children v. State, 259 Iowa 301, 310–311, 144 N.W.2d 97, 102–103 (1966), "This is a history of good intentions, but feeble resistance to temptation and wrongdoing, and little or no consideration for the unwholesome influences created or the moral and mental welfare of these children." In these circumstances we cannot gamble with the children's future. They must not be made to await their

mother's maturity. See In re Loeffelholz, 162 N.W.2d 415, 425–426 (Iowa 1968).

The termination decree was justified.

Affirmed.