## IN THE COURT OF APPEALS OF IOWA

No. 17-0925
Filed August 16, 2017

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**A.M., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan F. Flaherty, Associate Juvenile Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Annette F. Martin, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Kimberly A. Opatz, Linn County Advocate, Cedar Rapids, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child, M.M.[1] He claims that the State failed to prove the statutory grounds for termination, that he should be granted additional time for rehabilitative services, and that termination of his parental rights will be detrimental to the child because of because of their strong bond. Upon our de novo review, s*ee In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we affirm the juvenile court's order.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2016). This section provides termination may be ordered when there is clear and convincing evidence that a child age three or under who has been adjudicated a child in need of assistance (CINA) and removed from the parents' care for at least six of the last twelve months, or the last six consecutive months, cannot be returned to the parents' custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h). The first three elements of paragraph (h) are not in dispute; rather, the father asserts on appeal that the State failed to prove the fourth element. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."). To satisfy its burden of proof, the State must establish "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance." *See id.* § 232.102(5)(2); *see also In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). The

---

[1] The mother's parental rights were also terminated. She testified it was in the child's best interests to terminate her parental rights. She is not a party to this appeal.

threat of probable harm will justify termination of parental rights, and the perceived harm need not be the one that supported the child's initial removal from the home. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "At the present time" refers to the time of the termination hearing. *A.M.*, 843 N.W.2d at 111.

The father's argument that the State failed to prove the child could not be returned to his custody at the time of the termination hearing is fatally flawed. On appeal, he asks that he be granted an additional period of time for rehabilitative services. This request for more time is certainly a tacit, if not explicit, admission that the child could not be returned to his care at the time of the termination hearing. He admitted at the hearing that placement of the child with him was "a long ways off." He testified it would be three months before the child could be returned to his care. He was asked,

> if you had three more months of clean, consistent drug testing, three more months of continued care at the methadone clinic, three more months of stability in your housing and employment and three more months of consistency in your visitation, you think that [the child] would be able to be returned to your care and not be removed from your care?

He answered, "Yes." Given the circumstances, we believe this is sufficient evidence for the establishment of element four of section 232.116(1)(h). *See In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *4 n.5 (Iowa Ct. App. Mar. 22, 2017) (collecting cases in which termination of parental rights was affirmed because a parent admitted the child or children could not be returned to the parent's care at the time of the termination hearing).

In any event, the juvenile court found,

In the two years since [the child's] original placement in foster family care, [the father] and [the mother] have continued to cycle through the same patterns of behavior. They have each had periods of stability and consistency and they have each had periods of regression evidenced by use of substances, criminal charges and extended periods in jail, and unhealthy adult relationships evidenced by ongoing criminal charges and police contact for [the father], [the mother] and [the father's girlfriend]. . . . [The father] has never progressed to a trial home placement, he has progressed to unsupervised visitation, only to move back to fully supervised visitation due to his use of substances and ongoing concerns regarding domestic violence. An extension of time to achieve reunification was granted by the court in May of 2016 and in the months that have passed since that extension was granted, neither parent has demonstrated any sustained period of sobriety or stability. Chaos and conflict in their relationship has continued. Neither [the father] or [the mother] have been able to maintain sobriety or a safe, stable environment which would allow [the child] to be safely returned to the care of a parent, either now or any time in the reasonably near future.

. . . .

. . . [The father] has taken some recent steps to stabilize his life. He now acknowledges his need for substance-abuse treatment and that his use of oxycodone is a problem. He has recently begun treatment through a methadone program. [The father's girlfriend] is also receiving substance-abuse treatment through the same methadone program. [The father] plans to continue to have a relationship with [his girlfriend]. Although [the father's girlfriend] and [the father] each maintain their own housing, [the father] acknowledged that [his girlfriend] spends most of her time at his apartment. He testified that he and [his girlfriend] are resuming couples counseling. [The father] is currently participating in a batterer's education program required as a result of his criminal cases. [The father] believes that his relationship with [his girlfriend] is stable now that they are both in treatment and not abusing prescription pills. [The father] acknowledged in his testimony that his motivation to engage in services after [the child's] second removal from [the mother]'s care in October of 2016 was because it seemed that he would not be able to rely on [the mother] to regain custody of [the child]. [The father]'s testimony demonstrated that he continues to have limited insight as to his issues and the steps he would need to take to be able to assume full time care of [the child].

[The mother and the father] have been offered ample services by the Department of Human Services to assist them in getting their child returned to the care of a parent. These services included substance abuse evaluations, substance-abuse treatment,

> mental-health treatment, couple's counseling, family team meetings, parenting instruction with supervised visitation, drug testing, and services through the FSRP provider and the Department of Corrections. . . . [The father] has been inconsistent in his participation in all offered services. He has only recently acknowledged the need for substance-abuse treatment. He has failed to submit to drug testing for the majority of time he has been ordered to do so. He continues to minimize his role in the domestic violence that has recurred in his relationships with both [the mother and his girlfriend]. His recent efforts to participate in the services has been motivated by the termination of parental rights proceedings rather than any real increase in insight on his part and, as a result, are not likely to result in lasting change.

The court concluded the father was unable to provide a safe, stable home for the child and that it was very unlikely that the child could be safely returned to the father's care anytime in the foreseeable future. Having reviewed the record de novo, we agree. The State proved by clear and convincing evidence that grounds for termination exist under section 232.116(1)(h).

The father requests additional time for rehabilitative services. The CINA petition was filed in September 2014, and in October 2014, all parties stipulated the child was adjudicated to be a CINA. The child was removed from the mother's home in April 2015, and the child was placed in foster care. Since the case began a plethora of services were offered to the father, but, at best, he has been inconsistent with participation in those services. An extension of time to achieve reunification was granted in May 2016. Even then, the father waited another five months before seeking and beginning substance-abuse treatment. In October 2016, the same month that the child was removed from the mother for the second time, the father entered substance-abuse treatment. By that time, the case had been open for two years.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Children require permanency. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). Delaying permanency any further is not in the child's best interests. As we have stated numerous times, children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987); *see also In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990) ("We have long recognized that the best interests of a child are often not served by requiring the child to stay in 'parentless limbo.'" (citation omitted)); *In re Kester*, 228 N.W.2d 107, 110-11 (Iowa 1975) (refusing to "gamble with the children's future" or force the children to "await their [parent]'s maturity" where the parent's history shows "good intentions, but feeble resistance to temptation and wrongdoing"). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently,

"[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. At some point, as is the case here, the rights and needs of the child must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. The father has been given more than ample time to address his adult issues and demonstrate that he could provide a safe, stable, drug-free, and violence-free home for the child, and he was not able to do so. Any additional time in limbo would not be in the child's best interests.

The father "feels strongly that terminating his parental rights will be detrimental to [the child] because of the strong bond between father and [the child]." While not citing to it, the father's argument implicates section 232.116(3)(c), which permits the juvenile court to eschew termination of parental rights if it finds there is clear and convincing evidence the termination would be detrimental to the child due to the closeness of the parent-child relationship. In addressing this issue, the juvenile court concluded,

> [The child] is an adoptable child. He is young and personable. He is bonded to his parents. He is bonded to his foster parents. He is integrated into the foster family. The foster parents would like to adopt the child if parental rights are terminated. The strength of [the child]'s bond with both his parents and his foster parents is likely adding to the confusion and stress that he currently experiences. It is more detrimental to [the child] to continue with a reunification plan than it would be to terminate parental rights and allow him to be placed for adoption. The court finds that none of the exceptions to termination as set out in section 232.116(3) apply to these proceedings.

Upon our de novo review, we agree.

After reviewing all the evidence, we agree with the juvenile court that the State proved by clear and convincing evidence that grounds for termination exist under section 232.116(1)(h), termination of the father's parental rights is in the child's best interests, and none of the mitigating factors in section 232.116(3) apply to overcome that determination. The child was adjudicated CINA in October 2014, and the statutory time frame for reunification has passed. The child is in need of permanency, and should not have to wait any longer in limbo while the father attempts to resolve the issues that led to the adjudication. We conclude a grant of additional time for the father to work towards reunification is not justified under the circumstances. Accordingly, we affirm the juvenile court's order terminating the father's parental rights to his child M.M.

**AFFIRMED.**