# IN THE COURT OF APPEALS OF IOWA

No. 17-1329
Filed December 6, 2017

**IN THE INTEREST OF M.J.H.T., M.G.T., and M.D.T.,**
**Minor Children,**

**C.T., Mother,**
　　Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M.

Dreismeier, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Anne M. Rohling of Rohling Law, P.L.L.C., Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney

General, for appellee.

Roberta Jean Penning Megal of Public Defender's Office, Council Bluffs,

guardian ad litem for minor children.

Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A mother appeals the juvenile court decision terminating her parental rights. We hold the mother's parental rights were properly terminated under Iowa Code section 232.116(1)(h) (2017) and that termination of the mother's parental rights is in the children's best interests. We affirm the decision of the juvenile court.

## I. Background Facts and Proceedings

C.T. is the mother of M.J.H.T. ("the oldest child"), born in 2014, and M.G.T. and M.D.T. ("the twins"), born in May 2016. At the time of the twins' birth, the mother and the oldest child were living with the mother's mother and step-father. The twins tested positive for amphetamines and marijuana at their birth, and the mother tested positive for methamphetamines and marijuana. Shortly after the twins' birth, the Iowa Department of Human Services (DHS) received a child protective services referral alleging the mother used methamphetamine while pregnant with the twins. DHS representatives met with the mother and her mother. At the time, an application for ex-parte order of temporary removal was filed with the juvenile court, the oldest child was at home with a safety plan in place wherein the mother's contact with the child was supervised by her maternal grandmother. The twins remained in intensive care at the hospital. A form ex-parte order for the temporary removal of all three children was entered ordering the removal of the children from their home and placing them in the temporary care, custody, and control of the DHS. After the order was entered, law enforcement removed the oldest child from her maternal grandparents' home and transported her to a shelter, where she spent less than twenty-four hours. She was then placed with a maternal aunt. M.D.T. was discharged from the hospital to a foster home. M.G.T.

remained hospitalized to address feeding issues. After a temporary removal hearing, the juvenile court ordered "[t]hat the care, custody, and control of [the oldest child] remain with maternal aunt, subject to the supervision of the [DHS]." The care, custody, and control of the twins was ordered to "remain with the [DHS] for continued placement in hospital/shelter/foster care."

The three children were later adjudicated children in need of assistance (CINA). It was ordered that the care, custody, and control of oldest child be placed with her maternal grandparents. It was ordered that the care, custody, and control of the twins remain with the DHS for continued placement in foster care. This was the status quo at the time of the termination of parental rights hearing.

Following the removal of her children, the mother attended a drug-treatment program. After an unsuccessful discharge, the mother twice attempted and twice failed to complete inpatient substance-abuse treatment. When not residing in a treatment facility, the mother lived place to place with no permanent housing.

A termination of parental rights hearing was held on July 11, 2017. Although the mother appeared in person at the hearing, she did not testify. Subsequent to the hearing, the juvenile court terminated the mother's parental rights under 232.116(1)(e), (h) and (*l*).[1]

The mother now appeals that ruling.

**II. Standard of Review**

---

[1] The parental rights of the father to M.G.T. and M.D.T. were terminated. The parental rights of the alleged father to M.J.H.T. were also terminated. Neither is a party to this appeal.

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We will uphold an order terminating parental rights only if there is clear and convincing evidence establishing the statutory grounds for termination of the parent's rights. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.* "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## II. Discussion

Termination of parental rights under Iowa Code chapter 232 follows a now familiar three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40–41 (Iowa 2010). First, the court must determine if a ground authorizing the termination of parental rights under section 232.116(1) has been established. *See id.* at 40. Second, if a ground for termination is established, the court must apply the framework set forth in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. S*ee id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude termination. *See id.* at 41. The exceptions set forth in subsection three are permissive and not mandatory. *See A.M.*, 843 N.W.2d at 113.

Before the court may affirm the termination of parental rights, we must find clear and convincing evidence supporting one of the grounds for termination under 232.116(1). *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We consider section 232.116(1)(h).

Section 232.116(1)(h) provides a parent's right may be terminated if:

The court finds that all of the following have occurred:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

On appeal, the mother makes a general statement that the State did not prove the elements for this ground. There can be no dispute that elements (1) and (2) were met since all three children were under the age of three at the time of the hearing, and all three had been adjudicated CINA. The mother states that "[t]echnically, the oldest child was never removed from her home," and when a relapse in substance abuse took place, she returned to the help she needed— thereby claiming evidence of "such a positive transfiguration for [the mother means] she deserves the right to have her children with her and continue her sober life." So, we presume it is the third (as to the oldest child only) and fourth elements of paragraph (h) the mother challenges on appeal.

Following the birth of the twins, the court ordered a temporary removal of all three children. At the time of removal, the oldest child lived with her mother and maternal grandparents. Contrary to the mother's assertions, the oldest child was indeed removed from the mother's physical custody and the maternal grandparents' home. After the court granted an ex-parte temporary removal order placing custody of the oldest child with the DHS, law enforcement removed the child from her maternal grandparent's home and transported her to a shelter. After spending less than twenty-four hours in the shelter, she was placed with a maternal aunt subject to the supervision of the DHS.[2] She was then later placed in the custody of her maternal grandparents and was never returned to the custody of her mother.

In June 2016, the mother entered a residential drug-treatment program and the juvenile court ordered that the care, custody, and control of the twins be placed with the mother. But the order also provided that if she exited the program before successfully completing the program, the twins' care, custody, and control would be immediately removed from her custody and placed in the care, custody, and control of the DHS for shelter care/foster care placement. By July 5, the mother failed to comply with the rules of the facility and was prematurely discharged from

---

[2] We are unable to find an order in the file placing the child's care, custody, and control with the maternal aunt, but a later temporary order ordered "[t]hat the care, custody, and control of [the oldest child] remain with maternal aunt, subject to the supervision of the [DHS]." Although custody of the child was placed with the aunt, the child stayed primarily with her maternal grandparents. In any event, the record is clear that the oldest child was in fact removed from the mother's physical care and was removed from the grandparents' home.

the drug treatment program.[3]  The physical custody of the twins was immediately transferred back to the DHS, and they were placed into foster care.

We agree with the juvenile court that the State proved by clear and convincing evidence the children had been removed from the physical custody of the mother.  Furthermore, we find the State established that at the time of the termination hearing, the children had been out of the mother's custody for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.  We conclude the requirements of section 232.116(1)(h)(3) were met.

The record also demonstrates clear and convincing evidence the children could not be safely returned to the mother's care at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(h)(4).  Since the removal of her children in 2016, the mother has struggled to maintain stable housing—often living from place to place.  In addition to the lack of stability, the mother has failed to complete drug-treatment programs; she was discharged unsuccessfully on three separate occasions.  The juvenile court noted at the time of termination:

> [The mother] was unsuccessfully discharged from treatment in July 2016.  She did not reenter treatment until April 2017.  Upon being discharged in June 2017, she relapsed one week later on methamphetamine use.  She went back to inpatient treatment only to be unsuccessfully discharged two weeks later.  [The mother] has unresolved issues with substance abuse.  She has unresolved issues with her mental health.  This [c]ourt has seen very little evidence to support the idea that the children can be returned to the care of their mother in the near future.

---

[3] The treatment facility alleged the mother stole from staff members.

Upon our de novo review of the record, we agree that clear and convincing evidence supports termination of the mother's parental rights under section 232.116(1)(h).

The mother's petition on appeal implicates that termination of her parental rights is not in the children's best interests. Even though we determined statutory grounds for termination existed under section 232.116(1)(h), we must still ensure termination is in the children's best interests. *See In re A.B.*, 815 N.W.2d at 776. In considering the children's best interests, we give primary consideration "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 40.

The twins were born prematurely—testing positive for amphetamine and marijuana. Throughout the life of these proceedings, the mother was offered a plethora of services. Nevertheless, the mother's participation in services was inconsistent, and she was slow to progress. At the time of the termination hearing she had not successfully completed substance-abuse treatment and was not then participating in substance-abuse treatment. The mother was a no-show for thirty of the past thirty-four drug tests; at the time of termination, the mother's most recent drug test was positive for methamphetamines. She had not yet addressed her mental-health issues. She had no stable employment or permanent living arrangements. At the time of the termination hearing, the mother was not in a position to successfully care for her children's needs. We therefore conclude, termination of the mother's rights is in the children's best interests.

The mother's petition on appeal also implicates one of the permissive exceptions under section 232.116(3)—at least as to the oldest child—because she was in the custody of her maternal grandparents. Under section 232.116(3)(a), the court need not terminate the relationship between the parent and child if a relative has legal custody of the child. Here, the juvenile court noted that at the time of the termination hearing, there was testimony that the grandparents were unable to continue caring for the child and had asked to be relieved of her care. The child had spent time with the twins' foster family, and it was the DHS's plan to place the child with the foster parents, who were willing to be a permanent placement for all three children. The juvenile court concluded, "Given the [un]expected change of events, this court does not believe the provision within the code related to relative placement applies." We agree.[4]

The mother's petition on appeal also suggests she should be given more time. The juvenile court noted, "These children can't continue to wait for permanency. . . . These children are very young and vulnerable. Additional time will not alleviate this problem." Again, we agree.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. Children require permanency. *See In re*

---

[4] In a placement order entered after the termination hearing, but before entry of the termination of parental rights order, the juvenile court ordered custody of the oldest child be with the DHS for placement in family foster care. In the termination of parental rights order, the juvenile court ordered that the children be placed in the custody of the DHS for preadoptive placement.

*J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). Delaying permanency any further is not in the children's best interests. As we have stated numerous times, children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987); *see also In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990) ("We have long recognized that the best interests of a child are often not served by requiring the child to stay in 'parentless limbo.'" (citation omitted)); *In re Kester*, 228 N.W.2d 107, 110-11 (Iowa 1975) (refusing to "gamble with the children's future" or force the children to "await their [parent]'s maturity" where the parent's history shows "good intentions, but feeble resistance to temptation and wrongdoing"). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. At some point, as is the case here, the rights and needs of the children must rise above the rights and needs of the parent. *See In re C.S.*, 776

N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. The mother has been given more than ample time to address her adult issues and demonstrate that she could provide a safe, stable, drug-free home for the children, and she was not able to do so. Any additional time in limbo would not be in the children's best interests.

The mother's petition on appeal also suggests the State failed to make reasonable efforts to reunify the children with her because they were not placed with her at a residential treatment facility. The State must extend reasonable efforts to reunify a parent and child consistent with a child's best interests. *C.B.*, 611 N.W.2d at 493. If a service has not been offered, it is the parent's job to demand it. *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997). We find nothing in the record showing the mother made such a request. Even had she made a specific request that the children be placed with her at the treatment facility, the DHS had good reason to deny such a request. Due to payment issues, the mother was only going to be allowed to stay thirty to forty-five days. The juvenile court noted the DHS "did not feel comfortable with the children being placed with [the mother] in treatment only for them to be discharged very soon afterwards with no transition plan in place." Upon the mother's discharge, she entered a half-way house where children were not allowed. She was at the half-way house for a week before she relapsed and was kicked out. She returned to the treatment facility but left a short time later. Under our de novo review of the record, we conclude the State met its reasonable-efforts obligation.

**IV. Conclusion**

We find the grounds for termination under Iowa Code 232.116(1)(h) have been established by clear and convincing evidence.  The termination is in the best interests of the children.  We decline to apply any exception under section 232.116(3).  Accordingly, we affirm.

**AFFIRMED.**