# IN THE COURT OF APPEALS OF IOWA

No. 22-1980
Filed February 22, 2023

**IN THE INTEREST OF L.D. and A.D.,**
**Minor Children,**

**S.D., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lynn Poschner, District Associate Judge.

        A mother appeals the juvenile court's order terminating her parental rights.

**AFFIRMED.**

        Teresa M. Pope of Pope Law, PLLC, Des Moines, for appellant mother.

        Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

        Lynn Vogan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

        Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of both parents of L.D. (born in 2017) and A.D. (born in 2015). The mother appeals. The father does not. We review decisions terminating parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).

## I. Termination Process

Analysis of termination cases follows a three-step process of (1) determining whether the State has established a statutory ground for termination, (2) applying the statutory framework of Iowa Code section 232.116(2) (2022) to determine whether termination is in the best interests of the children, and (3) considering whether to apply one of the permissive exceptions of Iowa Code section 232.116(3) to avoid termination. *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010). The mother challenges all three steps, and she also asserts that she should have been given an additional six months to work toward reunification.

## II. Analysis

### A. Statutory Grounds

As to the first step, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f). Section 232.116(1)(f) permits the court to terminate parental rights upon proof of four elements: (1) a child is four years of age or older; (2) the child has been adjudicated a child in need of assistance (CINA); (3) the child has been removed from the physical custody of the child's parents for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) there is clear and convincing evidence that the child cannot be returned to a parent's custody at the time of the termination

hearing. *In re A.C.*, No. 22-1443, 2022 WL 16986259, at *1 (Iowa Ct. App. Nov. 17, 2022).

The mother challenges only the fourth element, asserting that the children could have been returned to her custody at the time of the termination hearing. On our de novo review, we agree with the juvenile court that the children could not be returned to the mother's custody. In reaching this conclusion, we look at this family's history.

This family came to the attention of the Iowa Department of Health and Human Services in 2018 around the time the mother and father divorced. The department became involved after the father overdosed on heroin while responsible for the children's care. The department completed additional assessments in 2020 following incidents of the children wandering around unsupervised in their apartment building while the mother drank in the family's apartment. After an episode of the mother dropping the older child off at school on a day when school was not in session and failing to respond to school officials' attempts to contact her, followed by the family being evicted from its apartment and living in a vehicle, CINA proceedings were started. Shortly thereafter, the children were removed from parental custody and adjudicated CINA. Both children tested positive for methamphetamine at the time of removal.

For the next sixteen or so months leading up to the termination hearing, the mother was sporadic in exercising visits with the children, attending her needed mental-health treatment, managing her medication, and dealing with her medical

issues.[1]  She also never submitted to drug testing in a timely manner.  She continued to maintain contact with the father, even though they used drugs together and the father had physically beaten the mother on at least one occasion. The mother hid this continued contact from service providers and her own therapist.  By the time of the termination hearing, the mother contradicted previous reports she had made and claimed the father had never abused her in any way and that he was a support person for her.

We find the continued dedication to her relationship with the father particularly troubling.  The father has a history of over a decade of drug abuse, which devolved into intravenous use of heroin and methamphetamine, and he made no meaningful efforts to address his substance-abuse problems throughout the four-year period of department involvement.  The mother's view of the father as her support person highlights her lack of awareness that makes her unable to keep the children safe.  *See In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021) ("It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists.").

We agree with the juvenile court that the children could not be returned to the mother's custody at the time of the termination hearing.  Statutory grounds for termination of her rights were established.

---

[1] The mother has a benign brain tumor and narcolepsy.  The juvenile court found that the mother's "absence in her children's lives, lack of insight into [the father]'s drug use and violence, or general inconsistency" cannot be attributed to her medical diagnoses.  On our de novo review, we agree with these findings.

### B. Best Interests

We also find it is in the children's best interests to terminate the mother's parental rights. The mother highlights that she has secured stable housing. While this is commendable, adequate parenting involves more than just providing a place to live, food, and clothing; it involves providing a safe home. *In re H.W.*, 961 N.W.2d 138, 144 (Iowa Ct. App. 2021). The mother's failure to safeguard the children from their drug-addicted and abusive father negates any suggestion that the mother would provide a safe home, as does her sporadic involvement with services. And, while it is also commendable that the mother ramped up her efforts at addressing her physical and mental-health issues just before the termination hearing, the mother has not demonstrated an ability to maintain that effort over the long haul, which is what these children need. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) (considering a child's best interest involves assessing "the best placement for furthering the long-term nurturing and growth of the child"). We agree with the juvenile court that termination of the mother's parental rights is in the children's best interests.

### C. Permissive Exceptions to Termination

The mother also asks us to apply section 232.116(3)(c), which permits us to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Applying an exception is permissive, not mandatory, and the burden is on the parent to establish the exception. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).

We have no doubt there is some bond between the mother and the children and that the mother loves the children and vice versa. But love is not sufficient to trigger the exception. *In re L.B.*, No. 21-0937, 2021 WL 3896359, at *4 (Iowa Ct. App. Sep. 1, 2021). The relevant consideration is whether the children will be disadvantaged by termination. *Id.* The evidence shows that, as the mother continued to miss some visits and be late for others, the children began to show signs of stress over the visits. The older child began to show less enthusiasm for visits and physically hang back from interacting with the mother. The younger child would cry at the end of visits, but would demonstrate signs of anxiety when the mother was late, as she often was. The mother's lack of responsibility in attending visits does not bode well for her ability to demonstrate responsibility on a full-time basis, and the children should not be left in a state of anxiety and stress wondering if and when the mother is going to be there for them. Based on our review of the record, we are not convinced that it will be detrimental to the children to terminate the mother's rights, so we decline to apply the exception for termination provided by section 232.116(3)(c).

**D.     Additional Time**

As a final challenge, the mother asserts that she should have been given an additional six months to work toward reunification. This is a permissible option if the juvenile court decides not to terminate rights. *See* Iowa Code § 232.117(5) (permitting the court to utilize any of the permanency options under section 232.104 if it decides not to terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permancy option of giving a parental an additional six months to work toward reunification). To exercise this option, however, a court

must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

We are unable to enumerate any factors, conditions, or expected behavioral changes that would justify granting the request for an extension. While we are mindful of the mother's increased effort at addressing her issues just before the termination hearing, we are also mindful of the juvenile court's accurate observation that "[w]hile [the mother] has had a positive two months prior to the termination hearing, this appears to be part of a cycle rather than a genuine movement forward when the history of the family is viewed as a whole." The mother has had department involvement for around four years, with periods of progress followed by periods of back sliding. We are not convinced that a few weeks of effort after the court's permanency order directed the initiation of termination proceedings means that removal will not be necessary in six months. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (finding efforts "of very recent origin" to be an unpersuasive "eleventh hour attempt to prevent termination"); *In re K.A.*, No. 20-0979, 2020 WL 5946114, at *2 (Iowa Ct. App. Oct. 7, 2020) ("[E]leventh hour attempts do not warrant an extension of time or prevent termination of [parental] rights."). We will not gamble the children's future by delaying termination in the hope that the mother will show sufficient improvement in the next six months that she has been unable to show in the past. *See In re D.W.*, 385 N.W.2d 570, 578 (Iowa 1986) ("[W]e cannot gamble with the children's

future. They must not be made to await their mother's maturity." (quoting *In re Kester*, 228 N.W.2d 107, 110–11 (Iowa 1975))).

## III.    Conclusion

We agree with the juvenile court that statutory grounds for termination have been established, termination of the mother's parental rights is in the children's best interests, termination of rights would not be detrimental to the children due to the closeness of the mother's relationship with the children, and an additional six months to work toward reunification is not warranted. Therefore, we affirm the order terminating the mother's parental rights.

**AFFIRMED.**